**SALEM TRANSPORTATION COMPANY OF NEW JERSEY, INC., Metropolitan Limousine Service, Inc. and Salem Transportation Company, Inc., Plaintiffs,**

v.

**PORT AUTHORITY OF NEW YORK AND NEW JERSEY, Defendant.**

No. 84 Civ. 5756 (LFM).

United States District Court,
S.D. New York.

June 20, 1985.

---

Stein, Davidoff & Malito by Richard C. Stein, Matthew Feigenbaum and Ronni M. Rothbart, New York City, for plaintiffs.

Patrick J. Falvey by Arthur P. Berg, Richard K. Helman and Anne M. Tannenbaum, New York City, for defendant.

MacMAHON, Senior District Judge.

Plaintiffs, Salem Transportation Company of New Jersey, Inc., Metropolitan Limousine Service, Inc. and Salem Transportation Company, Inc. ("Salem"), move, pursuant to Rule 56, Fed.R.Civ.P., for partial summary judgment on the issue whether permit fees imposed by defendant Port Authority of New York and New Jersey ("Port Authority") violate 49 U.S.C. § 1513(a) and the Commerce Clause of the United States Constitution, Article 1, Section 8, Clause 3. Defendant Port Authority moves, also pursuant to Rule 56, for summary judgment dismissing the complaint.

## FACTS

Plaintiffs are engaged in the business of transporting air passengers to and from and between the New York area metropolitan airports by means of ground transportation. Some passengers are transported from one airport to another according to agreements between plaintiffs and certain airlines.

Port Authority, an agency of New York and New Jersey, created by an interstate

compact, maintains various public terminals, transportation and other facilities of commerce, including John F. Kennedy International Airport, LaGuardia Airport and Newark International Airport. It is within Port Authority's sole discretion to control the financing, construction, leasing charges, rates, tolls, contracts and operation of the air terminals.

Although ground access to the terminals is free, anyone desiring to solicit business at the airports must pay a fee. A permit is normally granted upon agreement to pay a gross receipts fee, which is sometimes in addition to a fixed minimum charge. In return for gross receipts fees, the permittee receives (1) the right to manned counters and/or courtesy phones and to have its services sold through consolidated counters in all Port Authority operated terminals and in all airline operated terminals; (2) the right to use roadways in front of, and adjacent to, terminals and waiting/parking areas; (3) a number of airport promotion and advertising benefits and (4) identification as a Port Authority permittee.

Starting in or about 1971, plaintiffs received certain permits from Port Authority which allowed plaintiffs to conduct their ground transportation operations at the airports in return for a fee based on a percentage of their gross receipts. The amount of permit fees depends on the number of passengers transported by plaintiffs and the price charged per passenger.

### DISCUSSION

Plaintiffs first contend that the imposition of the gross receipts fee for transportation of air travel passengers violates 49 U.S.C. § 1513(a), which prohibits the imposition of a head tax by local or state governments either on passengers or on the carriage of such passengers in air commerce. Specifically, § 1513(a) provides:

> (a) No State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States)

> shall levy or collect a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom; except that any State (or political subdivision thereof, including the Commonwealth of Puerto Rico, the Virgin Islands, Guam, the District of Columbia, the territories or possessions of the United States or political agencies of two or more States) which levied a tax, fee, head charge, or other charge, directly or indirectly, on persons traveling in air commerce or on the carriage of persons traveling in air commerce or on the sale of air transportation or on the gross receipts derived therefrom prior to May 21, 1970, shall be exempt from the provisions of this subsection until December 31, 1973.

The statute was enacted in response to the United States Supreme Court's decision in *Evansville-Vanderbush Airport Authority v. Delta Airlines*, 405 U.S. 707, 92 S.Ct. 1349, 31 L.Ed.2d 620 (1972).

In *Evansville*, the Supreme Court upheld passenger head taxes for aviation purposes enacted by New Hampshire and Evansville, Indiana. "The Court, in essence, ruled that states and cities could constitutionally impose a reasonable charge on interstate and intrastate air passengers in order to underwrite airport operational and developmental costs. Yet, the decision did not sufficiently define the ruling as, for example, what constitutes a reasonable charge, or just how far a state or municipality could go in levying head taxes." 1973 U.S.Code Cong. & Ad.News 1446.

■ In 1970, congress passed the Airport and Airway Development Act, which established a national Aviation Trust Fund for improvements in the national air transportation system. An 8% charge was levied on domestic passenger airline tickets, while $3.00 per person was charged for international trips. However, the congressional committee "never intended that air travelers would be subject to state and

local head taxes as well as to national user charges." *Id.,* at 1450.

The legislative history, as well as the few decisions which address § 1513(a) indicate that congress was concerned with the imposition of a double tax on air passengers traveling in air transportation or air commerce. *Id.,* at 1434–1463; 119 Cong.Rec. 3349–3350 (1973); *Aloha Airlines v. Director of Taxation of Hawaii,* 464 U.S. 7, ——, 104 S.Ct. 291, 293, 78 L.Ed.2d 10 (1983); *Island Aviation, Inc. v. Guam Port Authority,* 562 F.Supp. 951, 957 (D.Guam 1982); *Arizona v. Cochise Airlines,* 128 Ariz. 432, 436, 626 P.2d 596, 600 (Ariz.1981). In 1973, congress enacted § 1513(a) to ensure that double taxation would not result.

■ Plaintiffs contend that, since their ground passengers either have traveled, or will travel, by aircraft, a fee imposed on their gross receipts is equivalent to a head tax prohibited by § 1513(a). In support of their contention, plaintiffs rely on the statutory definitions of "interstate air commerce" and "interstate air transportation." Those terms mean the carriage by aircraft of persons or property for compensation or hire in commerce, between certain points "whether such commerce moves wholly by aircraft or partly by aircraft and partly by other forms of transportation." 49 U.S.C. § 1301(23), (24). Plaintiffs contend that their ground transportation is an "other form of transportation" and therefore a part of interstate air commerce or of interstate air transportation.

Plaintiffs, however, fail to apply the correct definitions of "air commerce" and "air transportation." "Air transportation" means "interstate, overseas, or foreign air transportation or the transportation of mail *by aircraft.*" 49 U.S.C. § 1301(10) (emphasis added). "Air commerce" means "interstate, overseas, or foreign air commerce or the transportation of mail *by aircraft* or any operation or navigation *of aircraft* within the limits of any Federal airway or any operation or navigation of aircraft which directly affects, or which may endanger safety in, interstate, overseas, or, for-

eign air commerce." 49 U.S.C. § 1301(4) (emphasis added). These are the definitions which should be applied to § 1513(a) to determine its parameters. 1973 U.S. Code Cong. & Ad.News 1452; *Cochise Airlines, supra,* 128 Ariz. at 435, 626 P.2d at 599.

Contrary to plaintiffs' assertions, there is no mention of "other forms of transportation" in these definitions. Even if plaintiffs' definitions were employed, they must be read in context. There is no evidence that congress intended that § 1513(a) would include a prohibition of fees on ground transportation service. Section 1513(a) was intended to include only air transportation and air commerce *by aircraft* and not other forms of service or transportation which may affect air transportation or air commerce by aircraft. The broad reading which plaintiffs assert would defeat the purpose of the statute and would cripple Port Authority's effective operation of the airports.

The legislative history is replete with references to *air* travelers, *air* passengers and *air* transportation. 1973 U.S.Code Cong. & Ad.News 1450–1453. The legislative discussions also indicate that the prohibition on state and local taxes only refers to taxes imposed on air transportation of airline passengers and not to other forms of transportation. 119 Cong.Rec. 3349–3350 (1973).

"Congress passed § 1513(a) to deal primarily with local head taxes on airline passengers." *Aloha Airlines, supra,* 464 U.S. at ——, 104 S.Ct. at 294–295. The section was not passed to prohibit the imposition of fees on ground transportation service.

■ Plaintiffs also contend that the permit fees violate the Commerce Clause of the Constitution, Article 1, Section 8, Clause 3, because § 1513(a) preempts Port Authority from levying a tax based on their gross receipts. This contention fails because we have found that § 1513(a) does not prevent Port Authority from imposing a permit fee based on plaintiffs' gross re-

ceipts derived from their ground transportation service.

Plaintiffs further contend that the fees constitute an undue burden on interstate commerce and violate the Commerce Clause because they (1) are discriminatory against interstate commerce; (2) are not based on a fair approximation of use or privilege and (3) are excessive.

In a similar situation, "the fee charged by the Port Authority [was] not subject to challenge under the Commerce Clause." *Transport Limousine of Long Island v. Port Authority of New York and New Jersey,* 571 F.Supp. 576, 581 (E.D.N.Y. 1983). As a market participant, Port Authority is not subject to the restraints of the Commerce Clause. *Id.* The challenged fee does not constitute a burden on interstate commerce. Plaintiffs' conclusory allegations are insufficient to show that the fees charged are not reasonable and fixed according to some fair and practical standard. *Id.* at 582.

Accordingly, plaintiffs' motion for summary judgment is denied. Defendant's motion for summary judgment is granted and the complaint is dismissed.

So ordered.